| Estado Libre Asociado de Puerto Rico TRIBUNAL DE APELACIONES PANEL VII | | |
|---|---|---|
| IGNACIO PACHECO RÍOS *Recurrente* v. DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES *Recurrido* | TA2026RA00011 | Revisión Administrativa procedente de la Comisión Apelativa del Servicio Público (CASP) Caso Núm.: SA-18-000086 Sobre: Retención |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 24 de febrero de 2026.

Comparece ante nos Ignacio Pacheco Ríos (señor Pacheco Ríos o recurrente) mediante recurso de *Solicitud de Revisión Judicial* y solicita la revocación de la *Resolución*[1] emitida y notificada el 11 de diciembre de 2025 por la Comisión Apelativa del Servicio Público (CASP o agencia recurrida). En el referido dictamen, la CASP declaró *No Ha Lugar* la *Moción de Reconsideración*[2] presentada por el recurrente.

Por los fundamentos expuestos a continuación, se ***confirma*** la *Resolución* impugnada.

### I.

El caso de autos tuvo su génesis el 30 de enero de 2018, cuando el Departamento de Recursos Naturales y Ambientales (DRNA o recurrido) le cursó una misiva de *Formulación de Cargos*[3] al recurrente en la que le informó la intención de destituirlo de su cargo por abandono del servicio. Así las cosas, el 7 de septiembre de

---

[1] Apéndice 2 del recurso de *Revisión Judicial*, Anejo V.
[2] Apéndice 2 del recurso de *Revisión Judicial*, Anejo IV.
[3] Apéndice 2 del recurso de *Revisión Judicial*, Anejo I, págs. 1-5.

2018, el recurrido le envió una segunda misiva al señor Pacheco Ríos en la cual puntualizó que luego de la Vista Informal celebrada el 12 de abril de 2018 y evaluado el expediente administrativo, había decidido destituirlo de su cargo[4].

Inconforme, el 10 de octubre de 2018, el recurrente presentó una *Apelación*[5]. En la misma, el señor Pacheco Ríos impugnó la determinación del DRNA de destituirlo de su puesto de trabajo como sargento del Cuerpo de Vigilantes. Por su parte, el 25 de octubre de 2018, el recurrido sometió su *Contestación a Apelación*[6]. Allí, argumentó que el recurrente abandonó el servicio y que en los meses en que estuvo ausente, trabajó en EDE Coop como guardia de seguridad[7].

Luego de varios trámites procesales, el 3 de mayo de 2019 se celebró la vista en sus méritos, en la cual las partes estipularon la siguiente prueba documental:

1. **EXHIBIT 1**- Carta de formulación de cargos fechada el 30 de enero de 2018 y recibida por el PROMOVENTE el 1 de febrero de 2018.

2. **EXHIBIT 2**- Carta de destitución fechada el 7 de septiembre de 2018 y recibida por el PROMOVENTE el 28 de septiembre de 2018[8].

Por su lado, el DRNA presentó la siguiente prueba documental:

a. **EXHIBIT 1 APELADO**- Certificación fechada el 11 d[e] enero del 2018 del Comisionado, Luis Medina Muñiz sobre instrucción impartida al personal de la Unidad Marítima de Piñones de trasladarse a la Comandancia durante el paso del Huracán María.

b. **EXHIBIT 2 APELADO**- Comunicación fechada el 30 de octubre de 2017 del Teniente I Santiago J. Pabón Almodóvar al teniente Coronel Ángel Cruz Medina y al Comisionado Luis Medina Muñoz sobre patrón de ausencias del PROMOVENTE.

c. **EXHIBIT 3 APELADO**- Comunicación fechada el 1 de noviembre de 2017 del Teniente I Santiago J. Pabón Almodóvar al PROMOVENTE notificando las ausencias

---

[4] Apéndice 2 del recurso de *Revisión Administrativa*, Anejo I, pág. 8.
[5] Apéndice 2 del recurso de *Revisión Administrativa*, Anejo I, pág. 7.
[6] Apéndice 2 del recurso de *Revisión Administrativa*, Anejo II, pág. 7.
[7] *Íd.*
[8] *Íd.*

sin justificación y concediéndole la oportunidad de someter evidencia que justificara las referidas ausencias.

  d. **EXHIBIT 4 APELADO**- Récord de asistencia del PROMOVENTE.

  e. **EXHIBIT 5 APELADO**- Recibo de entrega del arma de reglamento fechado el 1 de febrero de 2018.

  f. **EXHIBIT 6 APELADO**- Comunicación del Comisionado Luis Medina Muñiz al PROMOVENTE fechada el 1 de febrero de 2018 sobre ocupación del arma de reglamento.

  g. **EXHIBIT 7 APELADO-** Certificación del presidente ejecutivo de EDE COOP sobre servicios ofrecidos por el PROMOVENTE en la cooperativa como guardia de seguridad del 3 de octubre de 2017 al 15 de noviembre del mismo año[9].

En cuanto a la prueba testifical presentada por el recurrido, se incluyeron los testimonios del: Sargento Luis Medina Muñiz[10], Teniente Santiago Jaime Pabón Almodóvar[11], Teniente Coronel Ángel Cruz Medina[12], Ángel Luis Rodríguez Negrón[13], Sargento Haydelin Ronda Torres[14], Carlos Fontánez Pérez[15] y Teniente Henry Colón Vázquez[16].

Evaluadas las alegaciones de las partes, la prueba documental y testifical así como la totalidad del expediente administrativo, el 12 de noviembre de 2025, la CASP emitió el *Informe de la Oficial Examinadora*[17] y realizó las siguientes determinaciones de hechos:

  1. EL PROMOVENTE Ignacio Pacheco Ríos era para el año 2017 Sargento del Cuerpo de Vigilantes en el DRNA, adscrito a la unidad marítima de Piñones.

  2. El 17 de septiembre de 2017, el entonces Gobernador de Puerto Rico, Ricardo A Rosselló Nevares promulgó el Boletín Administrativo OE-2017-047 declarando un estado de emergencia en Puerto Rico y activando a la Guardia Nacional ante la inminencia del paso por Puerto Rico del huracán María.

---

[9] Apéndice 2 del recurso de *Revisión Judicial*, Anejo II, págs. 7-8.
[10] *Íd.*, págs. 8-10.
[11] *Íd.*, págs. 10-12.
[12] *Íd.*, págs. 20-22.
[13] Presidente de la Cooperativa de Empleados del Departamento de Educación. *Íd.*, págs. 12-20.
[14] *Íd.*, págs. 22-26.
[15] Supervisor del área de Servicios al Empleado en la Oficina de Recursos Humanos del DRNA. *Íd.*, págs. 26-29.
[16] *Íd.*, págs. 29-33.
[17] Comisionada Asociada, Lcda. Maranyelí Medina Durán. Apéndice 2 del recurso de *Revisión Judicial*, Anejo II.

3. El 20 de septiembre de 2017, el huracán María azotó Puerto Rico con vientos sostenidos de 155 mph entrando por Yabucoa y atravesando la isla.

4. El DRNA promulgó un Plan de Contingencia que incluye tres (3) fases denominadas Alfa, Bravo y Charlie.

5. Las fases del Plan de Contingencia del DRNA consisten en lo siguiente:

   a. Fase Alfa: Cubre las primeras 72 horas antes del evento. En esta etapa se realizan preparativos personales y familiares, se aseguran las viviendas y se establecen los planes de contingencia.

   b. Fase Bravo: Abarca las 48 horas previas, en las que se aseguran los equipos y vehículos, se llenan los tanques de combustible, se verifican los listados de personal y se asignan los turnos y áreas de trabajo.

   c. Fase Charlie: Son las últimas 24 horas antes del impacto, en las que se decide el traslado del personal y los equipos a zonas seguras, se bajan las bases vulnerables y se protege la flota de botes y vehículos. En esta fase ya se trabaja en turnos de doce (12) horas de 6:00 a.m. a 6:00 p.m. y de 6:00 p.m. a 6:00 a.m. y se suspenden los días libres y las vacaciones.

6. El 19 de septiembre de 2017, el PROMOVENTE tomó servicio a las 9:30 a.m. y rindió servicio a las 6:00 p.m.

7. El 25 de septiembre de 2017, el PROMOVENTE tomó servicio a las 6:00 a.m. y rindió servicio a las 2:00 p.m.

8. El 26 de septiembre de 2017, el PROMOVENTE tomó servicio a las 6:00 a.m. y rindió servicio a las 2:00 p.m.

9. El 2 de octubre de 2017, el PROMOVENTE tomó servicio a las 8:00 a.m. y rindió servicio a las 6:35 p.m.

10. Los días 19, 25 y 26 de septiembre de 2017 y el 2 de octubre de 2017 los turnos para todos los empleados del DRNA era de doce (12) horas con turnos de 6:00 a.m. a 6:00 p.m. y de 6:00 p.m. a 6:00 a.m.

11. Del 3 de octubre de 2017 hasta el 14 de enero de 2018, el PROMOVENTE no se reportó a trabajar y no se comunicó con sus supervisores. Tampoco justificó sus ausencias.

12. El PROMOVENTE trabajó como guardia de seguridad en EDE COOP, utilizando su arma de reglamento en las siguientes fechas:

   a. 3 al 13 de octubre de 2017 en horario de 9:00 a.m. a 3:30 p.m.
   b. 14 al 31 de octubre de 2017 en horario de 8:30 a.m. a 4:00 p.m.
   c. 1 al 15 de noviembre de 2017 en horario de 8:30 a.m. a 4:00 p.m.

13. El 1 de noviembre de 2017, el Teniente I Santiago J. Pabón Almodóvar le notificó al PROMOVENTE una comunicación en la que le notificó sobre sus ausencias sin autorizar y le apercibió [d]e su derecho a someter evidencia de sus ausencias.

14. El 30 de enero de 2017, el PROMOVENTE recibió la formulación de cargos en las que se le imputó abandonar el servicio y se le apercibió de su derecho a solicitar una vista informal, así como que se exponía a ser destituido de su puesto de trabajo.

15. La vista informal se celebró el 12 de abril de 2018.

16. El 7 de septiembre de 2018, la Autoridad Nominadora del DRNA suscribió la destitución del PROMOVENTE que le fue notificada el 28 de septiembre de 2018[18].

Así pues, en el informe se mantuvo la decisión del DRNA de destituir al señor Pacheco Ríos debido al incumplimiento del Reglamento del Cuerpo de Vigilantes de Recursos Naturales y Ambientales, *infra*[19]. Esto, debido a que el recurrente abandonó sus funciones en medio de la emergencia por el huracán María y utilizó su arma de reglamento para proveer seguridad a un ente privado[20].

En vista de lo anterior, el 18 de noviembre de 2025, la CASP emitió y notificó una *Resolución*[21] en la cual acogió el *Informe de la Oficial Examinadora*. Por consiguiente, declaró *No Ha Lugar* la *Apelación* presentada por el señor Pacheco Ríos. Inconforme con tal dictamen, el 8 de diciembre de 2025, el recurrente presentó una *Moción de Reconsideración*[22]. Allí, adujo que no fue entrevistado en la investigación que realizó el recurrido antes de que se emitiera la *Formulación de Cargos* y que eso violentó su debido proceso de ley. Asimismo, arguyó que en la misiva de *Formulación de Cargos* se hizo constar que cuando es la primera vez que el empleado incumple con una violación, la imposición es suspensión del empleo y sueldo por una cantidad de días. Examinado el petitorio, el 11 de diciembre de

---

[18] *Íd.*, págs. 33-35.

[19] Se le destituyó por incurrir en faltas graves, según establecidas [las] disposiciones del *Reglamento del Cuerpo de Vigilantes de Recursos Naturales y Ambientales*. Específicamente la falta grave número tres (3): insubordinación, falta grave número veinticinco (25): dejar de personarse al servicio para recibir instrucciones y falta grave número sesenta y dos (62): abandono de servicio. Véase, *Íd.*, pág. 42.

[20] Surge del *Informe de la Oficial Examinadora* que, aunque al señor Pacheco Ríos se le imputaron múltiples faltas, no las cometió todas. No obstante, la CASP sostuvo que el recurrido abandonó su empleo en un estado de emergencia por lo que la medida disciplinaria impuesta por el DRNA debía sostenerse. Véase, *Íd.*, pág. 44.

[21] Apéndice 2 del recurso de *Revisión Judicial*.

[22] Apéndice 2 del recurso de *Revisión Judicial*, Anejo IV.

2025, la CASP emitió y notificó una *Resolución*[23] en la cual declaró *No Ha Lugar* la reconsideración.

Insatisfecho aun, el 9 de enero de 2026, el señor Pacheco Ríos acudió ante este foro intermedio y le imputó a la agencia recurrida el siguiente señalamiento de error:

> ERR[Ó] LA CASP AL DETERMINAR QUE LA DRNA ACTU[Ó] CORRECTAMENTE AL DESTITUIR AL APELANTE, ESTO CUANDO CLARAMENTE VA EN CONTRA DEL PROPIO REGLAMENTO DE LA DRNA, EL CUAL ESTABLECE QUE POR UNA PRIMERA INFRACCI[Ó]N AL ABANDONAR SERVICIO PROCEDE UNA SUSPENSI[Ó]N DE NOVENTA (90) D[Í]AS Y ES EN LA TERCERA INFRACCI[Ó]N QUE PROCEDE LA DESTITUCI[Ó]N.

El 16 de enero de 2026[24], emitimos una *Resolución* concediéndole término a la agencia recurrida hasta el 17 de febrero de 2026 para que presentara su alegato en oposición. Así pues, según ordenado, la recurrida compareció mediante *Escrito en Cumplimiento de Resolución* y alegó que durante aproximadamente tres meses (3) el señor Pacheco Ríos incumplió reiteradamente con sus deberes, obligaciones y responsabilidades como miembro del Cuerpo de Vigilantes, como empleado del DRNA y como empleado de carrera. Asimismo, sostuvo que el DRNA basó su actuación en un patrón de conducta del recurrente durante los últimos meses del año 2017 y durante enero de 2018 consistente en la falta de respeto a los deberes, responsabilidades y obligaciones de éste como agente del orden público. Finalmente, esbozó que las actuaciones del señor Pacheco Ríos revistieron tal gravedad que se justificaba la destitución de su puesto como Sargento del Cuerpo de Vigilantes.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

---

[23] Apéndice 2 del recurso de *Revisión Judicial,* Anejo V.
[24] Notificada el 20 de enero de 2026.

**II.**

**-A-**

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[25]. Por su parte, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) establece el marco de revisión judicial de estas decisiones[26]. Cónsono con lo anterior, nuestra función revisora se limita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[27].

Debido a la vasta experiencia y conocimiento especializado que tienen las agencias administrativas sobre los asuntos que le son encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[28]. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley[29]. Es por esta razón, que la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción[30]. Hay que señalar que las determinaciones de los organismos administrativos

---

[25] Art. 4006(c) de la Ley Núm. 201-2003, 4 LPRA sec. 24(y)(c).

[26] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

[27] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

[28] *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020); *PRHOA v. Confederación Hípica*, 202 DPR 509, 521 (2019).

[29] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025).

[30] *Pérez López v. Depto. de Corrección*, 208 DPR 656, 673 (2022); *Super Asphalt v. AFI y otro, supra*, pág. 821; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 394 (2012).

están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[31].

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal[32]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[33]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado; (2) la decisión de la agencia está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[34].

Ahora bien, si la decisión del organismo administrativo no estuvo basada en evidencia sustancial; erró en la aplicación o interpretación de las leyes o los reglamentos que se le encomendó administrar; o actuó de manera irrazonable, arbitraria o ilegal, al realizar determinaciones carentes de una base racional; o si la actuación lesionó derechos constitucionales fundamentales, la deferencia debida a la agencia debe ceder[35].

Si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo

---

[31] *Trigo Margarida v. Junta Directores, supra,* págs. 393-394; *Mundo Ríos v. CEE et al.,* 187 DPR 200, 219 (2012), citando a *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).
[32] *Vélez v. A.R.Pe.,* 167 DPR 684, 693 (2006).
[33] *Super Asphalt v. AFI y otro, supra; González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013); *Trigo Margarida v. Junta Directores, supra,* pág. 394.
[34] *OEG v. Martínez Giraud,* 210 DPR 79, 89 (2022); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35-36 (2018); *Pagán Santiago et al. v. ASR,* 185 DPR 341, 358 (2012).
[35] *OEG v. Martínez Giraud, supra,* pág. 90; *Super Asphalt v. AFI y otro, supra,* pág. 819, citando a *Torres Rivera v. Policía de PR, supra,* pág. 628; *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 744-745 (2012).

ante su consideración[36]. De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[37].

Sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno[38]. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente administrativo por el suyo. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[39].

**-B-**

La CASP es un foro administrativo cuasi-judicial creado para atender casos laborales y de administración de recursos humanos[40]. La creación de dicho foro administrativo respondió al reconocimiento de la labor de los foros administrativos al descongestionar los tribunales, la experiencia y especialización de las agencias, la uniformidad de sus fallos y remedios, y el bajo costo de la litigación administrativa para las personas afectadas[41].

**-C-**

El DRNA, en virtud de la autoridad que le confiere la Ley Núm. 23 de 20 de junio de 1972, según enmendada, mejor conocida como la "Ley Orgánica del Departamento de Recursos Naturales y

---

[36] *González Segarra et al. v. CFSE, supra,* pág. 277; *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216-217 (2012); *Pereira Suárez v. Jta. Dir Cond.,* 182 DPR 485, 511 (2011).

[37] *González Segarra et al. v. CFSE, supra; Pereira Suárez v. Jta. Dir Cond., supra,* pág. 513, citando a *Domínguez v. Caguas Expressway Motors, Inc.,* 148 DPR 387, 398 (1999); *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

[38] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales, supra.*

[39] *González Segarra et al. v. CFSE, supra,* págs. 277-278; *Batista, Nobbe v. Jta. Directores, supra,* pág. 217, citando a *Rebollo v. Yiyi Motors, supra.*

[40] Art. 2 del El Plan de Reorganización Núm. 2 de 26 de julio de 2010, "Plan de Reorganización de la Comisión Apelativa del Servicio Público", 3 L.P.R.A. Ap. XIII.

[41] *Íd.*

Ambientales"[42]; la Ley Núm. 1 de 29 de junio de 1977, según enmendada, mejor conocida como "Ley de Vigilantes de Recursos Naturales del Departamento de Recursos Naturales y Ambientales"[43]; y la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, mejor conocida como "Ley de Procedimiento Administrativo Uniforme"[44], adoptó el 6 de diciembre de 2011 el "Reglamento del Cuerpo de Vigilantes de Recursos Naturales y Ambientales", Reglamento Núm. 8114 (en adelante, Reglamento Núm. 8114).

El Artículo 2 del Reglamento Núm. 8114 establece que el propósito de este es:

> ¨[d]ar cumplimiento al mandato de Ley y propiciar el desempeño eficiente de las funciones asignadas al Cuerpo de Vigilantes de Recursos Naturales y Ambientales, garantizando una administración eficiente y proporcionando a los Miembros del Cuerpo, el pleno disfrute de los principios de mérito en el servicio público, que les garantiza la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, mejor conocida como *Ley Para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico*¨.

Por otro lado, el Artículo 3 establece que el mismo es aplicable a los Miembros del Cuerpo de Vigilantes de Recursos Naturales y Ambientales. Así como también que los términos y condiciones de empleo que establece este Reglamento aplicarán a los(as) empleados(as) en la medida que las mismas no sean incompatibles con las disposiciones del Convenio Colectivo vigente.

Así pues, el Art. 9 del precitado Reglamento provee las acciones y medidas disciplinarias. En particular, dispone que:

> El (La) Secretario(a) podrá separar del Cuerpo a cualquiera de sus Miembros que sea objeto de alguna acción disciplinaria cuando su actuación ponga en riesgo la salud y seguridad de los(as) demás empleados(as) y del público en

---

[42] 3 LPRA sec. 151 *et seq.* La precitada ley fue derogada y sustituida por la Ley Núm. 110-2020, según enmendada, conocida como "Ley del Cuerpo de Vigilantes de Recursos Naturales y Ambientales del Gobierno de Puerto Rico".

[43] 12 LPRA ant. sec. 1201 *et seq.*

[44] 3 LPRA ant. sec. 2101, *et. seq.* La Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la "Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico", 3 L.P.R.A. sec. 2101, *et. seq.* fue derogada y sustituida por la Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", 3 L.P.R.A. sec. 9601, *et. seq.*

servicio, hasta que concluya la investigación y se le adjudique la acción disciplinaria pertinente si alguna. Esta separación será solo de empleo no de sueldo. Asimismo, el(la) Secretario(a) podrá, en el uso de su discreción, imponer la acción disciplinaria que mejor entienda, tomando como criterios el historial del (de la) empleado(a), los agravantes y atenuantes del caso, aumentando o disminuyendo la sanción.

Esbozado lo anterior, el Art. 9.1 (b) del Reglamento Núm. 8114 enumera ciertas acciones que se consideran faltas graves. Pertinente a la controversia que nos ocupa, el Art. 9.1 (b)(3) establece que:

**(3) Insubordinación**

Cualquier Miembro del Cuerpo que desacate o desobedezca órdenes trasmitidas en forma verbal o escrita por cualquier supervisor(a) o funcionario(a) civil del Cuerpo, con autoridad para ello o que realice actos de insubordinación o indisciplina, incurrirá en una falta grave, que será sancionado por:

Primera vez: Suspensión de empleo y sueldo por treinta (30) días

Segunda vez: Suspensión de empleo y sueldo por cuarenta y cinco (45) días

Tercera vez: Destitución

(Énfasis provisto).

Asimismo, el Art. 9.1 (b)(25) establece las sanciones para cuando un Miembro del Cuerpo deja de personarse al servicio para recibir instrucciones en casos de emergencia. Las mismas son las siguientes:

Primera vez: Suspensión de empleo y sueldo por sesenta (60) días

Segunda vez: Suspensión de empleo y sueldo por noventa (90) días

Tercera vez: Destitución[45]

Finalmente, el Art. 9.1 (b)(62) considera una falta grave el abandono de servicio cuando un Miembro del Cuerpo se ausenta del servicio sin la debida autorización o sin haber sido debidamente relevado. De igual forma, el precitado Artículo entiende abandono de servicio, cuando el Miembro del Cuerpo abandona:

---

[45] *Íd.*

[e]l servicio sin previa autorización del (de la) supervisor(a) inmediato(a), excepto en situaciones de extrema emergencia. Es responsabilidad del (de la) empleado(a) notificar a la brevedad posible la razón por la cual abandona el servicio una vez ceses la emergencia. Incurrirá en una falta grave, que será sancionado por:

Primera vez: Suspensión de empleo y sueldo por sesenta (60) días

Segunda vez: Suspensión de empleo y sueldo por noventa (90) días

Tercera vez: Destitución[46]

**-D-**

En virtud de la facultad que le confiere la Ley Núm. 184 del 3 de agosto de 2004, según enmendada, mejor conocida como la "Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico se aprobó el Reglamento de Normas de Conducta, Medidas y Sanciones Disciplinarias del Departamento de Recursos Naturales y Ambientales.

El mencionado Reglamento en su Artículo 4 (44) define sanción disciplinaria como una:

[A]cción que habrá que imponer la(el) Secretaria(o), como Autoridad Nominadora, hacia un empleado por cometer infracciones a las normas de conducta según lo establecido en el Reglamento. Estas pueden consistir de reprimendas escritas, suspensión de empleo y sueldo o **destitución**, y pasarán a formar parte del expediente personal del empleado[47]. (Énfasis nuestro).

**III.**

En el caso de autos, el señor Pacheco Ríos adujo que, la CASP incidió al determinar que el DRNA actuó correctamente al destituirlo, cuando va en contra del propio reglamento de la agencia recurrida. Pues el mismo establece que por una primera infracción al abandonar el servicio procede una suspensión de noventa (90) días y es en la tercera infracción que procede la destitución.

---

[46] Art. 9.1 (b)(62)(c) del Reglamento Núm. 8114.
[47] Reglamento de Normas de Conducta, Medidas y Sanciones Disciplinarias del Departamento de Recursos Naturales y Ambientales, Departamento de Recursos Naturales y Ambientales, 23 de noviembre de 2015, pág. 14.

Por su parte, el DRNA arguyó que el señor Pacheco Ríos no solo abandonó su servicio a partir del mes de octubre de 2017 durante una emergencia atmosférica que afectaba a la Isla, sino que, además, ofreció servicio de Guardia de Seguridad en EDE COOP desde el 3 de octubre hasta el 15 de noviembre de 2017. Es decir, el recurrente no solo abandonó su servicio sin justificación alguna, sino que también, durante su jornada laboral en el Cuerpo de Vigilantes, trabajó para una entidad privada. Por consiguiente, el señor Pacheco Ríos tenía dos (2) trabajos al mismo tiempo cuyos horarios confligían. Entiéndase que el trabajo del recurrente en EDE COOP era incompatible con su puesto y funciones como parte del Cuerpo de Vigilantes. Además, mientras el señor Pacheco Ríos trabajaba en EDE COOP hacía uso de su arma de reglamento autorizada como empleado del DRNA.

Si bien es cierto que el Art. 9.1 (b)(3), (b)(25), (b)(62)(c) del Reglamento Núm. 8114, *supra*, indica que es a la tercera infracción que procede la destitución del Miembro del Cuerpo, también es cierto que, **el(la) Secretario(a) podrá, en el uso de su discreción, imponer la acción disciplinaria que mejor entienda, tomando como criterios el historial del (de la) empleado(a), los agravantes y atenuantes del caso, aumentando o disminuyendo la sanción[48]**.

De igual manera, el Art. 4 (44) del Reglamento de Normas de Conducta, Medidas, Sanciones Disciplinarias del Departamento de Recursos Naturales y Ambientales, *supra*, reconoce que la(el) Secretaria(o) puede imponerle una sanción disciplinaria a un empleado. Dicha sanción puede consistir de reprimendas escritas, suspensión de empleo y sueldo o **destitución**, y pasarán a formar parte del expediente personal del empleado.

---

[48] Art. 9 del Reglamento Núm. 8114, *supra.*

Al considerar, lo antes esbozado, no podemos pasar por alto que las actuaciones del señor Pacheco Ríos revistieron tal gravedad que se justifica la destitución de su puesto como Sargento del Cuerpo de Vigilantes. Además, es menester puntualizar que, la CASP es el foro administrativo cuasi-judicial especializado para atender casos laborales y de administración de recursos humanos. Por ende, analizada la totalidad del expediente, le otorgamos entera deferencia al dictamen emitido por la agencia recurrida.

Por último, es necesario mencionar que el debido proceso de ley del recurrente fue salvaguardado, debido a que este tuvo: (1) una notificación de los cargos administrativos en su contra; (2) una descripción de la prueba con la que contaba el patrono, y (3) la oportunidad de expresar su versión de lo sucedido. De igual manera, en la vista ante la CASP, el señor Pacheco Ríos se limitó a adoptar por referencia la prueba documental anunciada por el DRNA y a no testificar.

**IV.**

Por los fundamentos que anteceden, ***confirmamos*** la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones